ROBERT G. BEVERLEY *v.* CAPTAIN AND OWNERS OF STEAMER EMPIRE.

Where a slave, belonging to a party residing in Kentucky, was hired as fireman on board a steamboat running as a packet between Louisville and New Orleans, but occasionally making trips to St. Louis, and upon the boat's making one trip to Cincinnati the slave disappeared—*Held:* That although she was advertised for Cincinnati to the knowledge of the lessor at the time he hired the fireman to the boat, yet there was a great want of prudence and care in proceeding to Cincinnati with the slave on board, and that under the common as well as civil law the lessees are responsible for the value of the slave. The fact that the boat was in the habit of landing at points in Indiana and Illinois does not change the case, so long as it is not shown that there was equal risk of losing a slave there as at Cincinnati.

APPEAL from the Third District Court of New Orleans, *Duvigneaud,* J. *Mott & Fraser,* for plaintiff. *Benjamin, Bradford & Finney,* for defendants and appellants.

MERRICK, C. J. The plaintiff, who resides in Henderson, Ky., was the owner of a slave which he hired to the defendants on board their steamboat the Empire, as a fireman.

At the time the slave was hired the boat was running as a packet between Louisville and this city. The boat also made occasional trips to St. Louis.

After the slave was hired the boat made one trip to Cincinnati, where he disappeared. It is in proof that it is customary to leave slaves at Louisville or to land them at Covington, Ky., where boats are about to land at Cincinnati. It is proven (as well as a matter of notoriety) that there is great risk in taking slaves to Cincinnati. The witness says: " It is a matter of almost absolute impossibility to prevent them from being run off."

It is proved that the boats running between Louisville and New Orleans, or Louisville and St. Louis, are in the habit of landing at points in Indiana and Illinois. One witness says : The boat, besides running to St. Louis and New Orleans, ran occasionally to Madison, Indiana ; that before the slave was hired to the boat, her sign-board showed her destination to be Cincinnati, and that the destination of the boat really depended on the inducements held out on the arrival at Louisville. The judgment of the lower court was in favor of the plaintiff for $1200, the value of the negro, and defendants appeal.

By the common law, the defendants were bound to take the same care to preserve the thing which a good and prudent father of a family would take of his own, and to restore the thing hired when the bailment was determined. I Bouvier Inst. § 993. By our law the lessee is liable for the injuries and losses sustained through his own fault.

We are of the opinion that the defendants are responsible. There was a great want of prudence and care in proceeding to Cincinnati with the slave on board. And the case would not be different if the boat really were advertised for Cincinnati to the knowledge of the plaintiff at the time he hired the fireman to the boat. For he would have reason to think that on the arrival of the boat at Louisville, the captain, if he intended to proceed to Cincinnati, would take the usual precautions for the security of such hands as were liable to be enticed away and lost. The fact, that the boat was in the habit of landing at points in Indiana and Illinois, does not change the complexion of the case, so long as it is not shown that there was equal risk with Cincinnati. It is not to be supposed that a slave owner would be willing that the hirer of his slave should take him to a point

where there would be so much danger, and the captain of the boat seems to have known this well, for when he returned from Cincinnati he told the plaintiff, (who naturally enough inquired about the safety of his property,) that the boy was on the boat, hoping, no doubt, that he should be able to recover him and deliver him to the owner.

Judgment affirmed.

LAND, J., absent.